NEWBURY and others *v.* SQUAIRES and others.[1]

*(Circuit Court, D. Massachusetts.    October 5, 1886.)*

PATENTS FOR INVENTIONS—TIME-LOCKS.
    Letters patent Nos. 284,049 and 284,142, of August 28, 1883, to Henry F.
Newbury, for improvements in mode of mounting time-locks, construed, and
*held* limited by the prior art to the particular modes of isolating time-locks
set out in the patents, and that defendants, employing substantially different
mechanism, did not infringe.

In Equity.
*Saml. A. Duncan* and *Benj. F. Thurston,* for complainants.
*Wells W. Leggett,* for defendants.
Before GRAY, Justice, and COLT, J.

COLT, J. The complainants allege infringement of two patents
numbered 284,049 and 284,142, dated August 28, 1883, granted to
Henry F. Newbury for improvements in mode of mounting time-locks.
The complainants contend that the ordinary mode of mounting time-
locks, by attaching them to the interior face of the outside door or
wall of a safe, does not afford protection against the use of dynamite
or other quick explosive.   By the explosion of a small charge of dy-
namite outside the door or wall of the safe, opposite or in close prox-
imity to the time-lock, it is said the delicate parts of the time move-
ment may be broken, in consequence of which it will run down, thereby
withdrawing the dog, and enabling the bolt-work to be released.   The
object of the Newbury invention is to guard against this danger by
the isolation of the time-lock from the door and walls of the safe.
Newbury describes three modes of isolation:   The time-lock may be
attached to the face of an inner door, sufficiently removed to prevent
injury from the bulging in of the outer door by means of dynamite;
or it may be mounted on a hinged supporting bar placed at a suffi-
cient distance behind the door; or it may be supported on a fixed
standard rising from the bottom of the structure, and removed so far
from the door and walls that it is protected from injury.

The defendants deny that Newbury was the first to isolate a time-
lock, and they introduce various alleged anticipations.   Before the
date of the Newbury invention it appears that time-locks had been
mounted on a plate or strip of metal which was attached at one or
both its ends to the bolt frame of the safe door.   They had been
mounted on a plate which was bolted to one of the bars of the bolt
frame, so as to bring the lock directly behind the bolt-bar.   They
had been attached to plates supported from the door by standards or
thimbles.   A time-lock had been fastened to a wooden block placed
in one corner of the safe, and held in place by wooden wedges.   Rub-

[1] Edited by Charles C. Linthicum, Esq.. of the Chicago Bar.

NEWBURY *v.* SQUAIRES. 753

ber washers had been interposed between the time-locks and the door to which they were secured, thereby removing them from direct contact with the face of the door. Safes had been divided into two compartments by a vertical partition extending from the door to the back of the safe, and a combination lock had been mounted on such partition.

In view of the prior state of the art, all that Newbury did, it seems to us, was to extend the idea of isolation a little further, to make it more complete. Perfect isolation of the clock and its lock-bolt from the door and walls of a safe would seem almost impossible. In one of the modes described by Newbury we find the standard upon which the time-lock is inserted placed on the bottom of the safe or vault; in another mode it is supported on a bar which is attached to brackets on the side walls of the safe. Admitting that Newbury was the first to discover that the use of dynamite necessitated a greater isolation of the time mechamism than afforded security against gunpowder or sledging, still the idea of separating the time-lock from the door or walls of a safe was old. To meet a new danger, he improved upon and extended an old idea. Newbury's invention is not a great discovery. It is for an improvement, and consequently he should be limited to the particular forms of devices described in his patents.

The first patent, No. 284,049, relates to details of construction, and the defendants are charged with infringement of the first claim, which is as follows:

"In combination with the door-bolts of a safe or vault door, a lock having a locking bolt, and a time movement connected therewith, mounted upon a support behind such door, and isolated therefrom, and from the walls of the structure, and made movable for giving entrance to the safe or vault."

In the second patent, No. 284,142, Newbury claims broadly the isolation of a time-lock, without confining himself to any particular mode of isolation. He says:

"What I claim as new is, in combination with a safe, vault, or similar structure, a lock having a locking bolt and a time movement connected therewith, placed within such structure, and having both its bolt and its time movement isolated from the door, and walls thereof, substantially as and for the purpose set forth."

However broad the language of these claims may be, we think they must be limited in their legal scope to the three modes of isolation described in the specifications and drawings of the patents.

It remains to consider whether the defendants use either of these three modes. If the defendants infringe, it is by the use of the first mode described by Newbury, for it is manifest that they do not use either the hinged supporting bar or the upright standard in mounting their time-locks. The first mode for mounting the time-lock found in the Newbury patents is by attachment to the face of the inner door. Turning to the specifications and drawings, we find that the lock is placed on the outside face of the inner door, which extends

across the safe from side to side. The bolt of the time-lock dogs the door-bolts of the outer door by means of an angle lever or jaw pivoted to the outer door, and which, together with a tie-bar, forms the connection between the sliding bolt of the time-lock and the door-bolts. Newbury proceeds upon the old plan of placing the lock behind the outer door, but, instead of attaching it in the old way to the inner face of the outer door, he attaches it to the outer face of the inner door.

In the defendants' safe the time-lock is mounted on the inner face of the inner door. It has two interior compartments, each closed by a separate door. In front of the two inner doors, closing the whole interior, is the outer door. The small door of the upper interior compartment has two locks mounted on its inner face,—one a combination lock, and the other a time-lock. The time-lock dogs the bolts of the inner door and the bolts of the outer door. This is effected by a mechanical connection between the two sets of bolts; the outer door having a pin which projects into the arbor or handle of the inner door, whereby, when the two doors are closed, the movement of one set of bolts will cause the movement of the other set, and the locking of one set effects the locking of the other. The defendants put the time-lock in the ordinary way upon the inner door, and their invention appears to consist in making the time-lock dog the bolt-work of both the outer and inner doors, rather than in the isolation of the time-lock, though undoubtedly the time-lock thereby becomes isolated. In our opinion, the defendants' structure is quite different from anything found in the Newbury patents.

Holding that Newbury is limited to the modes of isolating the time-lock set out and described in the specifications and drawings of his two patents, and the defendants employing substantially different mechanism, there can be no infringement, and the bill must be dismissed.